May it please the Court, Steve Sadie for Mr. Morales. This case involves a lingering separation of powers tension from the Mistreta decision in which the Supreme Court first upheld the validity of the guidelines against the conflicting circuits on the separation of powers issue. Because the Sentencing Commission has no authority to tell this Court what a statute means, what 3582C means, the district court had discretion to rule on a motion to reduce sentence where he unquestionably falls within the his guideline was overstated at the time of the original sentencing and he was in prison or has a prison sentence based on a supervised release violation. This identical situation was before the Court in Etherton. And in Etherton, this Court made a statutory ruling. This Court construed the meaning of the words had been sentenced based on a sentencing range that has subsequently been lowered to include persons with a supervised release violation. The words of the statute have not changed. The only intervening effect was commentary from the Sentencing Commission saying that it thinks that the Ninth Circuit was wrong in analyzing the statute under Etherton. Why aren't we bound by that? Excuse me? Why aren't we bound by that? This is the Commission's policy statement. And why doesn't that require us to follow suit? Because it's a purely judicial function to construe statutes. The Sentencing Commission has no business interpreting statutes. Its business is interpreting guidelines. It overstepped its bounds, its proper constitutional bounds, its proper statutory bounds, by coming and telling this Court what a statute says. And the ---- Did it say? I thought it said what the guideline said. Excuse me? It said ---- I thought it applied ---- it construed what the guideline said, not the statute. It can ---- what it said was that Etherton's decision was wrong, and as a consequence, there's no authorization to act in this situation. That is telling this Court what the statute says and that this Court is wrong. And that violates fundamental separation of powers. And the Supreme Court addressed this very similar question in Neal, this LSD case, where they said you can amend your guideline all you want. We said what the statute is. That's the judge's job. We have power to decide what the statute says. You may have power to give us advice about and clarifications about what guidelines say, but the judicial function is to say what a statute says. And this is a purely statutory decision. Under that statute, there was jurisdiction. And the district court incorrectly found that there was not jurisdiction under 3582C because they decided that, oh, well, if the Sentencing Commission tells us that this is what the statute really means, the Ninth Circuit must be wrong. This Court decides what the statute says and can't be corrected by the Sentencing Commission. That's not their function. It's not what happened in this situation. It's not what should happen in this situation. The Seventh Circuit doesn't agree with you, right? Excuse me? The Seventh Circuit doesn't agree with you. The Second Circuit. The Seventh. The Seventh Circuit didn't have to make that decision because they didn't agree with Etherton. They had come to a different resolution. And the way we resolve conflicts between the circuits or among the circuits is by taking it to the Supreme Court and getting a resolution. I thought you said more than that. Excuse me? I thought you said more than that. And we're talking about Foreman. Didn't they say that Etherton was superseded by Note 4A? That is what they say, and what we're saying is that 4A did not do that because So I said they disagree with you, right? I mean, you disagree with the Seventh Circuit. It is true that our position is that when you have definitively interpreted a statute commentary, which has not been subject to notice and comment, 994.0 or P, or any other form of guideline or procedural steps, they're just telling you, and they've told us quite literally, we disagree with Etherton. Well, that's not what their job is. Their job is not to, that did not supersede Etherton. They said we disagree with Etherton. It doesn't matter. What it said is that, I'm looking at Foreman, and what they said is they thought Note 4A superseded Etherton. And they didn't say they disagree with it. They didn't say it was wrong when decided. They just said, this is, I'm reading now, they said they thought the Note superseded Etherton. I think that analysis is incorrect, first of all. Well, I understand, but that's quite different from saying they disagree with Etherton. That's quite different from saying they disagree with Etherton, which is what you've been saying. For any other. But what they said was Etherton was overruled by the guideline. We can talk about whether that's right or wrong, but the position you are urging us to take would put us in direct conflict with the Seventh Circuit on this issue, right? I would suggest that they are putting themselves in conflict with the Ninth Circuit because they are, have not previously construed, so they were only taking Etherton as persuasive authority and then deferring to the construction superseded by finding that their authorization is definitive as far as the statute is concerned. That's not what I believe this Court should be doing. This Court should say we are bound by Etherton. Etherton said what the statute said, and 4A does nothing to affect that because it is, by its own terms, purports to overturn a statutory ruling of this Court. By its own terms is only a policy statement that can be. And on that, we disagree with the Seventh Circuit. The Seventh Circuit seemed to think that the note did supersede Etherton. And that's something we've not had an occasion to rule on before, so it's not like they are disagreeing with us. On the question of whether the note supersedes Etherton, the Seventh Circuit spoke first. And you are asking us to disagree with them. Absolutely that we should disagree with them. I think that the basis for the disagreement is that the 4A does not in any way supersede a statutory construction, especially where we know from exactly what the Sentencing Commission has said, the only basis for them saying that it's not authorized to consider a sentence under these circumstances is their different construction of statutes that this Court has definitively interpreted. For that reason, I think the Court does have jurisdiction. And the idea that commentary that does not – that is – especially in the Booker time, where under Booker, under Spears, under Kimbrough, the Court has – the Supreme Court has repeatedly told us that all guidelines are advisory to elevate a commentary that says you're wrong, Ninth Circuit, you should not be able to consider these types of situations because we disagree with the statutory analysis. That is – Well, in contrast, we said that in a different – dealing with a different section, obviously. But we said that the commentary to the guidelines is authoritative. And that when the commentary comes along and construes the guidelines after, as in this case, Etherton didn't have the benefit of the change in the commentary, you're saying we should not take that into account? Contreras was a different situation. Contreras, they removed language on the public trust, private trust situation, and so that the guideline that was being interpreted was different and – was different. And it also violated the basic rule of Stinson, which is it was the – there was no disparity between the commentary and the guideline. Here, it's a statute. And under Stinson, statute trumps. If this – if it's inconsistent with the statute, if their interpretation says you rethink you're wrong, that means nothing to this Court, because under Stinson you have to follow the statute. The statute cannot – you cannot be corrected by the Sentencing Commission about what, oh, you just didn't understand well enough what the statute meant. Here, let us tell you what it does mean. That's not how it works and still complies with the separation of powers. In order to comply with the separation of powers, comply with this Court's earlier ruling, request that the Court reverse and allow for the Court to exercise discretion. All we're saying is to give the Court a chance to exercise discretion. Okay. Thank you. Thank you. We'll hear from the governor. Thank you. May it please the Court. My name is Leah Bolstad, and I represent the United States. In this case, the defendant sought an unauthorized reduction in his supervised release revocation sanction, and this Court should affirm the district court's denial of that requested reduction for two reasons. First, the requested reduction is not consistent with the applicable policy statements issued by the Sentencing Commission. And second, the 36-month revocation term of imprisonment is not a term of imprisonment for which the sentencing range has subsequently been lowered by the Sentencing Commission. In other words, the requested reduction in this case fails both prongs of Section 3582c2. Etherton, in 1996, was decided at a time when the Sentencing Commission had not issued a policy statement on point. Etherton was decided before the Sentencing Commission enacted Note 4a a year later. But Etherton is an interpretation of the statute, right? That is correct. Okay. So why aren't we bothered by Etherton? This Court should not be bothered by Etherton because the statute, the statute is not bothered, bound. You understand the concept of bound? Because circumstances have changed since Etherton. The statute that you were interpreting in 1996 requires that any reduction must be consistent with the applicable policy statements. Well, there was no applicable policy statement in 1996. In 1997, the Sentencing Commission issued a policy statement, and Congress, in 3582, has conditioned a district court's jurisdiction upon consistency with those policy statements. So the Seventh Circuit has decided that Note 4a does, in fact, supersede Etherton. It wasn't disagreeing with the ---- I don't understand how the Sentencing Commission's policy statement can supersede our interpretation of the statute. They can have policy statements application of the guidelines, but how can they give binding ---- they don't have regulatory authority, right? Correct. So what is it, you know, what is it that gives them authority to overrule our interpretation of the statute? Yep. Maybe we're wrong in that, you know, we need to go and bank to overrule it, but what is it? Or maybe if we'd seen the guideline, we, you know, and we hadn't decided this issue, we'd look at it and say, well, sort of, we are, you know, made wiser by knowing what the commission thinks. But that's really quite different from saying that they are able to issue a superseding piece of law that overrules our interpretation of the statute. I don't see where you get that. Your Honor, it's the government's submission here that it is not the Sentencing Commission trumping this Court's interpretation of statute. It is the statute itself which requires consistency with policy statements. So ---- It requires consistency with policy statements in application of the guidelines. So if we apply the guidelines, then we are, we are, we have to look at what the commission says about our policy statements. But not in questions of what the statute means or what jurisdiction we have under the statute. That's not subject to the ---- that can't possibly be something that's subject to the commission's policy statements. They can give us policy statements as to what their work means. How can they give us policy statements as to what or how we should interpret the statute? They have not done so here because if you look carefully at this policy statement in Note 4a, it describes this section. It talks about this section not applying to reductions in supervised release. This section is 1B1.10. That's their view. That's their view of what the statute means, and that's interesting. The Seventh Circuit agrees with it, too. That's interesting, too. But how does that supersede our interpretation that's contrary to it? See, if it doesn't supersede it, we don't have authority to do it, even if we say, well, you're right. I just ---- I'm failing to see how ---- what the commission says about the statute as opposed to what the commission says about the guidelines, which are its handiwork, is binding on us so that we can ---- have to slavishly follow it. I ---- where does that ---- where does that come from? Allow me to clarify. Please. Note 4a refers to the guideline. It's the Sentencing Commission's interpretation of Amendment 706, an amendment from the Sentencing Commission. It does not purport to interpret 3582. It says it is interpreting how an amendment that is retroactive that was issued by the Sentencing Commission, how it should be applied. Okay. What does this amendment say? Amendment 4a or Amendment 706. I don't know. You were talking. So I got lost there, but whatever it is you think was the thing they're interpreting, what does it say? Application Note 4a says that only a term of imprisonment imposed as part of the original sentence is authorized to be reduced under this section, and the section they're referring to is 1B1.10, a guideline. When you say authorized by, it says a court is authorized to do. Right? Correct. Where do they get off telling us what authority we have? How do they have? Where do they get the authority to interpret the statute so as to supersede our interpretation of the very same statute? Do they have regulatory authority? You said no. Yeah. I mean, what do they have? What do they have? This is fine. This is their view. Interesting. So. Well, Congress has given the Sentencing Commission the duty and the authority to issue policy statements that go towards a consistent. Let's talk administrative law. Is this Chevron deference? What kind of deference is it? You know, give me an administrative law pigeonhole as to what deference we are talking about here. Is it like red lion? I mean, what administrative pigeonhole, what authority are they exercising that would be so high that it would supersede an interpretation of the statute that is binding on this panel, an interpretation by a prior panel on this court interpreting a statutory grant of authority to the federal courts? What kind of authority is this? I don't know that they have that kind of so high authority that trumps this court. Why don't you lose? Why isn't that the end of the case? Why don't you say, gee, you guys are bound by Ethelton. Ethelton is wrong. We move for a bank. You know, why is that what you're saying? Why are you trying to tell us that we are authorized to go back? I don't get it. Well, it's a two-pronged argument, and one is that the policy statements have changed. And Congress in 3582 said that district court jurisdiction. It's not about interpreting a statute, but district court jurisdiction is dependent upon and contingent upon consistency with policy statements. It doesn't say those policy statements are going to trump district court interpretations of law. It just goes to the threshold question about the narrow circumstances under which a final judgment. If we're interpreting the statute de novo, this would be very interesting because they would be. I understand all that. But you do understand the concept of circuit law, right? Yes. You're with me. And you understand that if the circuit law says A, even though three of us think that the correct statement of the law is B, we may not go with B. We have to go with A. Yes. I would agree with that. The only exception to that is under Miller v. Gammy. There has to be an intervening Supreme Court authority, right? Yes. No intervening Supreme Court authority, right? Intervening in bank decision of our court. You don't have that, right? No. Okay. Or if the piece of the thing that we're interpreting is a regulation that is issued by an agency, if the agency changes the regulation, then, of course, we are bound by that regulation. That's not true here either. Right. Okay. So what you've got left? What I have left is also that because of the change in the policy, but also because the way that Etherton came out, that the subsequent change to the amendment clarified how a retroactive guideline should be imposed and how it should be guiding the district court's discretion. You know, that's a good argument. You've got eight other circuits, you can argue that, who haven't got controlling authority. And if we didn't have controlling authority, I personally, I can't speak for my colleagues, but I would be very moved to agree with you. But, you know, the nice thing about, one nice thing about sort of controlling authority is we don't have to think about this. Well, your argument, are you relying on subsection 2 of 3582? I am relying on both subsections. You're saying that in the case of a defendant who's been sentenced to a term of subsection 2 of 3582, there has been a reduction in the amount of time that has been subsequently been lowered, which is what's happened here, right? No. And I see that my time has run out. May I answer your question? I haven't finished my question. But, yes. You know, you're going to stand there and talk as long as Judge Christian has questions. Thank you, Your Honor. There's no option about it. I just want to understand, you've said that because at the end of that, subsection 2 says if such reduction is consistent with applicable policy statements issued by the Sentencing Commission. Now, how does that tie in with your argument? I just want to tie your argument to the statute. The argument is under both prongs of the statute, the second part being consistency with the policy statement. But the first part is about what here is being requested to be reduced. And this is not a sentence that has been, this is not a requested reduction to a term of imprisonment that has been reduced. That's the argument. This is a supervised release revocation sanction, the guideline for which is in 7B1.4. That guideline was in no way impacted by Amendment 706. Amendment 706 addresses the drug quantity table and crack cocaine quantities. Those quantities have nothing to do with a district court judge's imposition of a revocation sentence. Revocation sentences are driven by criminal history and the nature of the underlying offense, the nature of the violation, grade A, B, or C, not drug quantity. And therefore, the district court lacked jurisdiction in this case. This Court should affirm the district court and join the Seventh and Tenth Circuits. That's independent of the Ethelton argument, right? That is. I'm sorry, what? That's independent. That's an argument independent of the Ethelton argument. Yes. The amendments simply don't apply. That the amendment does not apply here. Correct. Okay. Thank you. Mr. Salyer, we'll make it a minute, you know. We'll round it up to a minute. Thank you. Mr. Morales is somebody who has been sentenced under a guideline range that has subsequently been lowered from 28 to 26. And the statute is clear that he, as interpreted by Ethelton. But he served that sentence. Under Pascoe, under Ethelton. He served that sentence. Right now he's being we're talking about revocation of supervisory release. I disagree with my opponent's characterization of what happened to the supervisory release. I think that I did hear her say that it was for the original offense and then no time for the criminal history and the violation. It is part of the original sentence. That's the way the statute has been constructed. It's the way it's been construed authoritatively by this court. And to just address part of the administrative law issues in this case, obviously statute trumps any administrative action that you look at the actual nature of a rule rather than how the agency characterizes it. Here it's obviously been they're trying to treat it as a substantive rule that's contrary to statute without going through any of the procedural steps that you need to do to make such a rule. And that where it's based on a rule is based on a statutory error, that that is not given deference either. So none of these types of approaches to the policy statements and how it's not being it's basically being treated as a substantive rule instead of an interpretive rule goes far beyond anything that the sentencing commission has the authority to do as commentary, even as a policy statement. To that extent, the Court has already definitively construed the statute. Under the statute, Mr. Morales should have an exercise. All we're asking for is an exercise of discretion. Okay. Thank you. Thank you.
judges: Kozinski, Fisher, Paez